**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:26-CV-39**

| | |
|---|---|
| **DIANE COTTON,** Administratrix of the **ESTATE OF JACK COTTON, JR.** Deceased<br><br>vs.<br><br>**UNITED STATES OF AMERICA**, Defendant | **NO.** |

## ORIGINAL COMPLAINT

Plaintiff Diane Cotton, Administratrix of the Estate of Jack Cotton, Jr., Deceased brings this complaint under the Federal Tort Claims Act, 28 U.S.C. § 2674. Plaintiff complains of the United States and would show the following:

### PARTIES

1.1. This is a wrongful death and medical malpractice case that arises out of bodily injuries caused by agents and employees of the United States at the Charles George VAMC in Asheville, North Carolina.

1.2. Plaintiff Diane Cotton, widow of Jack Cotton, Jr., resides in Franklin, North Carolina which is within the jurisdiction of this Court. Diane Cotton has been duly appointed as the Administratrix of the Estate of Jack Cotton, Jr. in the General Court of Justice, Superior Court Division of Macon

County, North Carolina, and is therefore authorized to bring this action pursuant to N.C. Gen. Stat. §28A-18-2.

1.3. Defendant is the United States of America, its officers, agents, employees, and representatives.

## JURISDICTION, SERVICE & VENUE

2.1. This Federal District Court has jurisdiction because this action is brought under 28 U.S.C. § 2671–80, commonly known as the Federal Tort Claims Act.

2.2. The United States of America may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and Complaint on the acting United States Attorney Russ Ferguson, United States Attorney for the Western District of North Carolina by certified mail, return receipt requested at his office:

> The United States Attorney's Office
> ATTN: Civil Process Clerk
> 227 West Trade St.
> Suite 1650
> Charlotte, NC 28202

2.3. Service is also affected by serving a copy of the Summons and Complaint on Pam Bondi, Attorney General of the United States, by certified mail, return receipt requested at:

> The Attorney General's Office
> ATTN: Civil Process Clerk
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

2.4. Venue is proper in this judicial district under 28 U.S.C. § 1402(b) because the United States of America is a defendant and the acts and omissions complained of in this lawsuit occurred in this judicial district.

## AGENCY

3.1. This case is commenced and prosecuted against the United States of America to and in compliance with Title 28 U.S.C. §§ 2671–80, the Federal Tort Claims Act. Liability of the United States is predicated specifically on 28 U.S.C. § 2674 because the personal injuries and resulting damages of which the complaint is made were proximately caused by the negligence, wrongful acts and/or omissions of employees and/or agents of the United States of America working for the Department of Veterans Affairs, while acting within the scope of their office, employment, and/or agency under circumstances where the United States of America, if a private person, would be liable to the Plaintiff in the same manner and to the same extent as a private individual.

3.2. The United States Department of the Veterans Affairs is an agency of the United States of America.

3.3. The United States of America, through its agency, the Department of Veterans Affairs, at all times material to this lawsuit, owned, operated, and controlled Charles George VAMC in Asheville, North Carolina and staffed it with its agents, servants, or employees.

3.4. At all times material to this lawsuit, including in 2022 and 2023, providers at the Charles George VAMC in Asheville, North Carolina were

acting within the course and scope of their employment when providing treatment to Jack Cotton, Jr.

3.5. In 2022 and 2023, the Charles George VAMC in Asheville, North Carolina provided care and treatment to Jack Cotton, Jr. Jack Cotton, Jr. was a patient of the Charles George VAMC in Asheville, North Carolina and its providers had a doctor-patient relationship with him.

3.6. The following individuals were employees of the United States of America or its agency, acting within the course and scope of their employment when they provided treatment to Jack Cotton, Jr.: Ben C. Caputo, General/Vascular Surgery Resident; Jeffrey J. Nienaber, MD; Rony Boe, DNP, NP-C; Christopher D. Kenney, MD; Julie Rajotte-Caron, MD; Thomas E. Bateman, MD; and Dr. Douglas Huntley, Deputy Chief of Staff.

## JURISDICTIONAL PREREQUISITES

4.1. Pursuant to 28 U.S.C. §§ 2672 and 2675(a), the claims set forth here were filed with and presented administratively to the Department of the Veterans Affairs on April 12, 2024.

4.2. The claim of Diane Cotton set forth a "sum certain" of $5,000,000.

4.3. The claim of Diane Cotton, on behalf of the estate of Jack Cotton, Jr. set forth a "sum certain" of $5,000,000.

4.4. No exception to the Federal Tort Claims Act, 28 U.S.C. § 2680, bars this lawsuit.

4.5. The claims were denied on May 7, 2025. The claims were presented for reconsideration on May 27, 2025 and they were denied for the second and final time on August 19, 2025.

4.6. Accordingly, Plaintiff has complied with all jurisdictional prerequisites and conditions precedent to the commencement and prosecution of this suit.

# FACTS

5.1. This is a Federal Tort Claims Action for money damages based on substandard medical care provided by agents and employees of the Charles George VAMC in Asheville, North Carolina to Jack Cotton, Jr. beginning on or about October 28, 2022 resulting in his death on January 8, 2023.

5.2. On August 31, 2022, Jack Cotton was taken to the Charles A. George VA Medical Center ER following a fall. It was determined he had a wedge compression fracture of the first lumbar vertebra and he was admitted to the hospital. On September 1, 2022 he was transferred to Mission Memorial Hospital for a percutaneous vertebroplasty. This was performed successfully and he was immediately transferred the following day back to the VA hospital for further care.

5.3. He was discharged home from the Charles George VA Medical Center one week later, on 9/9/2022. He remained at home and followed his recommended treatment, including in-home PT and follow-up with primary care at the VA Clinic in Franklin.

5.4. On October 22, 2022, Jack called his wife Diane to his room after experiencing extreme pain in his leg. He could not move or get himself into a wheelchair without assistance. An ambulance was called and he was taken to Angel Hospital in Franklin, NC. The attending ER doctor immediately diagnosed a blood clot in his left leg and he was air lifted to the Charles A. George VA Medical Center in Asheville, NC. Once back at the VA hospital, he was taken to surgery. The vascular surgery team, led by Dr. Jeffrey Nienaber and assisted by Dr. Julie Rajotte-Caron, performed a fasciotomy.

5.5. On October 26, 2022 the fasciotomy was closed. He was discharged from the hospital two days later on October 28. Diane was instructed by VA providers to go to the Pharmacy area of the VA Hospital to receive his medications and instructions for administering them. She was given three anti-coagulants for her husband Jack: Warfarin, Lovenox, and Apixaban, along with receiving materials needed for wound care.

5.6. On October 31, 2022, Jack began to bleed profusely from his anal region. Diane immediately called the ambulance, and they transported him to Angel Hospital in Franklin, NC. The attending doctor at Angel Hospital questioned why he was receiving three blood thinning medications: Lovenox, Warfarin, and Apixaban. They administered a reversal agent Kcentra to slow the bleeding and gave him blood transfusions. They then transferred Mr. Cotton via ambulance back to Charles George VA Medical Center.

5.7. The next day, Rony Boe, NP questioned Diane about Jack's medication. He wanted her to return the bottle of Apixaban to the hospital. When she questioned why, he said it was a mistake and the medication never should have been given with the other blood thinners. NP Boe apologized for

the medical mistake and offered to investigate this as an adverse medical event to improve patient safety.

5.8. Once the bleeding was more under control, Jack was again discharged home on November 4, 2022. Dr. Rajotte-Caron stated that, following a colonoscopy and discussion with his GI provider, she did not believe the bleeding was from any malignancy or diverticulitis but was rather an ischemic event as a result of the blood thinner mistake. Surgery was not recommended to fix this problem.

5.9. On November 7, 2022, Jack and Diane received a call from Dr. Douglas Huntly apologizing for the mistake made by the VA as a "full disclosure" hospital. This call was recorded. Dr. Huntly offered to send paperwork to the Cottons for a FTCA filing. During the call, Dr. Huntley stated the VA made a mistake by prescribing three anticoagulants. He said this was "certainly not anything to do with [Diane]; it was nobody's fault but ours [the VA]….Again, nobody's fault but ours and I just want to make that very clear." He stated, "the first one should have been taken off and destroyed from your chart, but it wasn't." At that time, Jack did not realize the fatality of the situation and said his main concern was that NP Boe not be fired for this mistake. He expressed his appreciation for the care received at the Asheville VA center, not knowing that this mistake would kill him in only a few short months.

5.10. On November 8, 2022, Jack reported to the Franklin VA Outpatient Clinic for a discharge follow-up and to check his blood work. Jack and Diane later received a call and were told his WBC was very elevated and that he should return to the Asheville VA Hospital immediately. When he

arrived at the Charles George VA medical center, the ER diagnosed Sepsis (Klebsiella ESBL, C difficile bacteremia) and he was admitted to the hospital.

5.11. On November 21, 2022, Dr. Michael Lutarewych consulted with Jack and told him the sepsis would be recurring. He believed the overdose of blood thinners caused a hole in Jack's colon, and as they had told them previously, that Jack would not survive the surgery to close that hole. His situation would eventually be terminal after repeated sepsis treatments. Jack was informed that the IV treatments would keep his pain level down, but he could go home and receive oral sepsis treatments. He was placed on VA provided Hospice care. Jack made the decision that day not to return to the hospital even if his bloodstream infection returned. He chose to die at home rather than at the hospital.

5.12. Jack was discharged on November 22, 2022. He regressed physically and held on for one last family Christmas. After his son, who lives the furthest away, returned to his home on January 2, 2023, Jack said to Diane, "I can quit fighting now. Take me in the house to rest." Early on January 8, 2023, Jack died from his injuries.

5.13. Like his father who had a career in the Navy, Jack had enlisted in the United States Navy just before his eighteenth birthday. He was assigned to the USS Saratoga as a jet engine mechanic and was stationed in the Gulf of Tonkin for eleven months during the Vietnam War. After returning to the United States, he attended Southwestern Union College where he met and married his wife, Diane. They were married for 44 years and built a wonderful family with three children: Jesse, Hope, and Benjamin. He was employed by Halliburton in the industrial construction business and retired as Project Superintendent. After retirement, he relocated to Franklin,

North Carolina to care for his parents. He was employed by Macon County Schools as a custodian for Highlands School and East Franklin Elementary.

5.14. Jack spent his retirement years actively reading, gunsmithing, mowing, and gardening for his mother and wife. He was also a member of the VFW and American Legion and served on the VFW Honor Guard for a number of years. He was a loving and attentive husband, father, and grandfather to four loving grandchildren, and a devoted friend and neighbor who was needlessly taken too soon by a preventable and egregious medical mistake at the age of 69.

## CAUSES OF ACTION

6.1. Through its employees, agents, or servants, the Defendant United States of America, was negligent in one or more of the following respects:

a) In negligently prescribing three anti-coagulants simultaneously following surgery to Jack Cotton, Jr.;
b) In failing to timely and properly monitor Jack Cotton, Jr.;
c) In failing to timely and properly care for Jack Cotton, Jr.;
d) In failing to timely and properly assess Jack Cotton, Jr.;
e) In failing to timely and properly diagnose Jack Cotton, Jr.;
f) In failing to timely and properly treat Jack Cotton, Jr.;
g) In failing to properly prescribe the proper dose and duration of antibiotics to Jack Cotton, Jr. during his hospitalization; and,
h) In failing to timely and properly offer to perform surgery on Jack Cotton, Jr.

6.2. At all times relevant to this lawsuit, the officers, employees, agents, or representatives of the United States were negligent and caused the injuries and damages sustained by the Plaintiffs.

## DAMAGES

7.1. As a proximate result of the Defendant's negligent acts or omissions, Diane Cotton, as Administratrix of the Estate of Jack Cotton, Jr., sustained damages and injuries including, but not limited to:

a) Past physical and mental pain and suffering of the Decedent, Jack Cotton, Jr.;
b) Past medical expenses for care, treatment and hospitalization incident to the injury resulting in death;
c) Funeral and burial expenses of the decedent;
d) Services, protection, care and assistance of the decedent Jack Cotton, Jr., whether voluntary or obligatory, to the persons entitled to the damages recovered,
e) The present monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected;
f) Society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered; and
g) Other pecuniary damages.

7.2. In addition, Plaintiff Diane Cotton seeks recovery of all other damages to which she is entitled pursuant to the applicable state and federal law(s).

7.3. Plaintiff does not seek pre-judgment interest or punitive damages. *See* 28 U.S.C. § 2674. However, because it is gross negligence to prescribe three anticoagulants to any patient following surgery and the reckless disregard for Jack Cotton, Jr.'s life, under N.C. Gen. Stat. §90-21.19, recklessness that results in the death of a plaintiff is not subject to any cap on damages.

## COMPLIANCE WITH RULES 9(j) OF THE NORTH CAROLINA RULES OF CIVIL PROCEDURE

8.1. The allegations in all of the preceding paragraphs of the complaint are adopted, re-alleged and incorporated by reference as if fully set out herein.

8.2. Plaintiff objects to the requirement that she comply with Rule 9(j) of the North Carolina Rules of Civil Procedure on the grounds that 9(j) certification is not required for claims of ordinary negligence pursuant to *Lew v. Setty*, 130 N.C. App. 606, 503 S.E.2d 673 (1998), *appeal after remand*, 140 N.C. App. 536, 537 S.E.2d 505 (2000) and *Taylor v. Vencor, Inc.*, 136 N.C. App. 528, 525 S.E.2d 201 (2000).

8.3. Plaintiff further objects to the requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure on the basis that the rule requires Plaintiff to prove her claim before Plaintiff conducts discovery or accesses the courts. As applied, Rule 9(j) violates plaintiff's right to due process, equal protection under the law, trial by jury, and access to the courts as guaranteed by Article 1, Section 18, 19 and 25 of the North Carolina Constitution and Amendment 7 and 14 of the United States Constitution.

8.4. This pleading also alleges facts establishing breaches of common law duties for which certification of compliance with Rule 9(j) are not required. In particular, the claim against Defendant which does not allege medical malpractice by a healthcare provider in failing to comply with the applicable standard of care, but rather, alleges vicarious liability, respondeat superior and common law negligence – fall outside the requirements of Rule

9(j) of the North Carolina Rules of Civil Procedure and, as such compliance with Rule 9(j) with respect to this claim is not required.

8.5. This pleading also alleges facts establishing breaches of administrative or corporate duties of Defendant to the Plaintiff for which certification of compliance with Rule 9(j) is not required.

8.6. Plaintiff further objects to application of the requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure on the grounds that said Rule 9(j) is displaced by the Federal Rules of Civil Procedure which impose no such pre-complaint certification requirement prior to filing of a complaint under the Federal Tort Claims Act as set forth Title 28 U.S.C. §§ 2671–80. *Berk v. Choy, et. al.,* 607 U.S. ----, ---S.Ct. ----, 2026 WL 13594, No. 24-440 (2026).

8.7. Without waiving these objections and specifically reasserting and relying upon the same, the Plaintiff through counsel specifically asserts that the medical care rendered to Plaintiff by Defendant and all medical records pertaining to the alleged negligence of Defendant Hospital that are available to the Plaintiff after reasonable inquiry have been reviewed before the filing of this complaint by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence , [or who the Plaintiff will seek to have qualified as an expert witness by motion under Rule 702(e)] and who is willing to testify that the medical and nursing care provided did not comply with the applicable standard of care.

## RELIEF REQUESTED

9.1. Plaintiff requests that the United States be cited in terms of law to appear and answer this lawsuit. Upon final trial, Plaintiff seeks judgment against the United States for the amount of actual damages and for such other and different amounts that they shall show by proper amendment before trial; for post-judgment interest at the applicable legal rate; for all Court costs incurred in the prosecution of this lawsuit; and for such other relief, in law or equity, both general and special, to which the Plaintiff may show herself entitled to and to which the Court believes her deserving.

Respectfully Submitted,

/s/ Robert M. Grant, Jr.
   Robert M. Grant, Jr.
   Grant Richman, PLLC
   Post Office Drawer 166
   Newton, NC 28658-0166
   North Carolina Bar No. 6176
   rmgrant@grantrichman.com
   (828) 464-2391
   Local Counsel for Plaintiff

/s/ Laurie Higginbotham
LAURIE HIGGINBOTHAM
  lhigginbotham@nationaltriallaw.com
  Texas State Bar #50511759
  *Pro Hac Vice pending*
STEVEN HASPEL
  shaspel@nationaltriallaw.com
  Texas State Bar #24109981
  *Pro Hac Vice pending*
NATIONAL TRIAL LAW P.L.L.C.
1114 Lost Creek Blvd. Suite 410
Austin, TX 78746
(512) 476-4346 (o)
(512) 467-4400 (f)

Attorneys for Plaintiffs